IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MICHAEL E. LAYMON,                    )
                                      )
                Plaintiff,            )
                                      )
v.                                    )    Case No. CIV-17-237-JHP-KEW
                                      )
COMMISSIONER OF THE SOCIAL            )
SECURITY ADMINISTRATION,              )
                                      )
                Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Michael E. Laymon (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 48 years old at the time of the ALJ's decision. Claimant completed his high school education.  Claimant has worked in the past as a foreman and general laborer.  Claimant alleges an inability to work beginning September 21, 2013 due to limitations resulting from back pain which radiates down his legs and high blood pressure.

### Procedural History

On November 25, 2014, Claimant protectively filed for

3

disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  On December 9, 2014, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  On March 29, 2016, Administrative Law Judge ("ALJ") James Bentley conducted an administrative hearing in McAlester, Oklahoma.  On May 5, 2016, the ALJ issued an unfavorable decision.  On April 19, 2017, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's credibility; and (2) failing to reach an appropriate RFC determination.

## Credibility Analysis

4

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy, obesity, hypertension, depressive disorder, not otherwise specified, dysthymia, late onset, and opiate addiction. (Tr. 21). The ALJ concluded that Claimant retained the RFC to perform light work except Claimant was able to perform simple tasks and work-related decisions with routine supervision, could occasionally climb ramps and stairs, was unable to climb ladders, ropes, and scaffolding, could occasionally stoop, kneel, crouch, and crawl, and would require a sit/stand option, defined as a temporary change in position from sitting to standing and vice versa with no more than one change in position every 20 minutes and without leaving the work station so as not to diminish pace or production. (Tr. 23-24).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of cashier II, small product assembler, and inspector/packer, all of which were found to exist in sufficient numbers in both the regional and national economies even considering the reduction in the job base brought about by the requirement that Claimant be permitted to change positions. (Tr. 30). As a result, the ALJ found Claimant was not under a disability from September 21, 2013 through the date of the decision. Id.

Claimant contends the ALJ failed to properly assess his credibility. Claimant testified at the hearing that worked a feed store in 2013 for a little over a week. (Tr. 44-45). His condition has worsened since that time with lower back pain on the left that shoots down his legs with a lot of numbness in his legs and feet. He has health insurance. (Tr. 45).

Claimant has not had any type of epidural steroid injection to treat his back condition. He also has not had physical therapy because he does not have the finances to afford it. (Tr. 46).

The pain in his back is mostly all of the time. He has to move around and stretch and try to get comfortable. His wife takes care of doing the dishes and laundry. Claimant fixes light meals in the microwave or the deep fryer if his wife is at work. (Tr. 47).

On an average day, Claimant watches a lot of television. He might walk outside and around a little bit. Then, watch more TV or read a magazine or book. (Tr. 48).

When seated in a chair, Claimant squirms and fidgets due to pain. His foot is numb. He usually tries to get up and move around. He does not believe he could sit in one spot for very long. The position that gives him complete relief is leaning back in a recliner with his legs out straight with a vibrator in the chair or on his back. (Tr. 48).

Claimant has problems with kidney stones which he passes with

6

pain. He was taking opiates for pain. He was prescribe Suboxone instead. (Tr. 49). He had been taking a lot of opiates. (Tr. 50). Now he takes over-the-counter medication only for pain. Id.

The ALJ employed the oft-used phrase that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 28). The ALJ recited the medical evidence.

Claimant was examined by Dr. Sung Choi on March 7, 2015. Claimant reported a frequent need to urinate, urgent need to urinate, difficulty starting to urinate, burning or pain with urination, blood in urine, and incontinence. He also reported low back pain, painful joints, painful muscles, and muscle spasms or cramps. Upon examination, Claimant's extremities showed no edema, no point tenderness, and grip strength of 5/5 bilaterally strong and firm. Claimant was able to perform both gross and fine tactile manipulation, finger to thumb opposition was adequate, knees were stable in all range of motion exercises, great toe strength was equal bilaterally, leg lengths and circumferences were equal bilaterally. Cervical and thoracic spines were non-tender with full range of motion. The lumbar spine range of motion was slightly limited. Claimant's flexion was decreased to approximately 60 degrees, with extension limited to approximately ten degrees. Pain

was noted throughout the range of motion of his spine.  He reported sensory loss and paresthesias in the L4 and L5 distributions of the left lower extremity.  He exhibited a positive straight leg raise in the supine position on both sides but not in the seated position. Claimant was awake, alert, and oriented x 3.  Recent and remote memories were intact, speech intelligible, thought processes appeared normal, no signs of overt pathology.  Claimant's gait was safe and stable with appropriate speed.  He did not require a walking aid.  No muscle atrophy was noted.  Heel/toe walking was normal.  Tandem gait was within normal limits.  (Tr. 580-81).  Dr. Choi concluded that "I do feel that his given profession in construction and performing normal work-related tasks in his chosen profession would be made difficult with any prolonged standing or any other physically taxing activities given his current medical condition."  (Tr. 581).

The ALJ found this opinion was entitled to "significant weight" because it arose from an in person examination and was consistent with imaging studies of Claimant's back.  He stated that although the opinion stated Claimant could not return to his past work he could perform at the light exertional level with restrictions.  (Tr. 27).

On December 30, 2011, Dr. George B. Howell authored a medical source statement on Claimant.  He estimated Claimant could sit for

8

15 minutes at one time and two hours during an eight hour workday; stand and walk for 30 minutes at one time and two hours during an eight hour workday; no manipulative limitations; no use of feet for repetitive movements; no crawling, climbing, or crouching; occasional bending, squatting, stooping and kneeling; no exposure to unprotected heights; no driving automotive equipment; occasional being around machinery; and occasional exposure to marked temperature changes. Dr. Howell rated Claimant's pain as severe. He would need unscheduled breaks, would need to lie down at unpredictable times, would have his pain interfere with concentration and attention, would have his pain severe enough to affect his ability to tolerate work stress. He would likely be absent from work more than four days per month. (Tr. 355-56). Claimant would need to elevate his feet periodically during the day, would need a sit/stand/walk option at will, and would need to use a cane or assistive device. (Tr. 357).

The ALJ gave Dr. Howell's opinion "very little weight" as it was offered almost two years prior to the alleged onset date and pertains to a claim which was previously adjudicated. (Tr. 27).

Dr. Diane Brandmiller performed a mental status examination of Claimant on February 28, 2012. She concluded Claimant had a depressed mood, poor sleep, low energy, lack of motivation, and low

self esteem. However, she determined Claimant's memory, concentration, and abstract thinking were intact. He appeared able to understand and carry out simple instructions. (Tr. 334). Little weight was given to the opinion by the ALJ because it was offered a year before the relevant period except that it supported a finding that Claimant could perform simple tasks. (Tr. 27).

The ALJ also gave significant weight to the reviewing consultants, Dr. Judy Marks-Snelling and Dr. Karl Boatman, because their opinions were consistent with the medical record and they concluded Claimant could perform light work. (Tr. 27-28).

The ALJ concluded with regard to Claimant's credibility that no opinion in the record from treating sources within the relevant period were consistent with Claimant's testimony of the limiting effects of his condition. He relied upon the fact that Claimant only received conservative and routine treatment with no surgery or injections. His symptoms did not worsen but remained consistent. Claimant also did not receive any mental health treatment and any mental restrictions were accommodated in the ALJ's RFC. (Tr. 29).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are

peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility. Moreover, none of the medical

professionals offering opinions in the case have suggested that a more restrictive RFC based upon Claimant's testimony should result. Claimant does not indicate any specific error in the credibility assessment other than to cite the standard for evaluating credibility and stating the ALJ failed to follow it.

## RFC Determination

Claimant also states that the RFC assessment should have included further restrictions based upon Dr. Choi's opinion. The statement regarding Claimant experiencing difficulties in standing and with physically taxing activities specifically pertained to his "chosen profession" of construction. (Tr. 581). The remainder of his opinion would allow for light work.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related

activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of July, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE